977 So.2d 386 (2007)
Wallace D. PRATT, Appellant
v.
Josephine G. PRATT, Appellee.
No. 2006-CA-00206-COA.
Court of Appeals of Mississippi.
September 11, 2007.
Rehearing Denied December 4, 2007.
Wren Carroll Way, Vicksburg, attorney for appellant.
Eugene A. Perrier, Vicksburg, attorney for appellee.
Before MYERS, P.J., ISHEE and CARLTON, JJ.
*387 ISHEE, J., for the Court.
¶ 1. Wallace D. Pratt and Josephine G. Pratt were divorced on February 26, 2002, on grounds of irreconcilable differences in Warren County Chancery Court. The Pratts entered into a property settlement agreement that was incorporated into the divorce judgment. On July 16, 2004, Wallace filed a motion to reform the property settlement agreement alleging the final agreement was formed under a mutual mistake of the parties due to a scrivener's error in the drafting. A hearing was held, and on December 29, 2005, the chancellor entered a memorandum opinion and final judgment denying Wallace's motion. On January 5, 2006, Wallace filed a motion for reconsideration. A hearing was held on the motion for reconsideration, and on January 13, 2006, the chancellor entered her final judgment denying the motion. Aggrieved, Wallace appeals asserting the following assignments of error for this Court's review:
I. The chancellor erred in not reforming the property settlement agreement to conform to the intent of the parties.
II. The chancellor erred in not correcting a clerical mistake, pursuant to Rule 60(a) of the Mississippi Rules of Civil Procedure, in the property settlement agreement which was incorporated into its judgment of divorce.
III. The chancellor erred, pursuant to Rule 60(b) of the Mississippi Rules of Civil Procedure, in not correcting a mistake in the property settlement agreement incorporated into its judgment of divorce.
Finding no error, we affirm.

FACTS
¶ 2. Wallace and Josephine were married on July 3, 1963, in Florence, Alabama. They lived as husband and wife until April 15, 2001. On February 26, 2002, in the Chancery Court of Warren County, the Pratts were divorced on the grounds of irreconcilable differences. They incorporated a property settlement agreement (agreement), pursuant to Mississippi Code Annotated section 93-5-7, into the judgment of divorce for the purpose of resolving all property rights between the parties. The agreement was executed by Wallace and Josephine, as well as their respective attorneys throughout the divorce and property settlement proceedings. Wallace's attorney of record was R. Louis Field and Josephine's was J. Mack Varner. As evidenced by the record, the agreement was reached by negotiations and correspondence mostly between the attorneys for their respective clients.
¶ 3. Initially, Varner sent Field a letter, via facsimile, on August 1, 2001, which requested information regarding (1) the balance of Wallace's Thrift Savings Plan, (2) the amount of his Social Security benefits upon his retirement, and (3) the amount he would receive from his government retirement benefits so that Varner could draft a settlement proposal. On November 29, 2001, Varner sent Field a draft settlement proposal which divided marital assets of real and personal property. In pertinent part to this appeal, the proposal included a request for $1,500 permanent periodic alimony to be paid monthly and a surviving spousal annuity in the full amount allowed by the government from Wallace's retirement benefits. The settlement proposal stated that Josephine would make no other claim on Wallace's government retirement, Social Security, and thrift savings account in exchange for the alimony and surviving spousal annuity. The next correspondence of record was sent by Field to Varner on December 5, *388 2001, as a counteroffer to Varner's originally proposed settlement. Field's counteroffer stated that no alimony would be paid, Wallace would carry Josephine as a dependant on his health insurance, and that a surviving spousal annuity from Wallace's government retirement would be provided for Josephine in the event Wallace predeceased her.[1]
¶ 4. On December 10, 2001, Field sent Varner the complaint for divorce and indicated that a property settlement agreement was forthcoming. Wallace, through Field, filed the complaint for divorce on December 13, 2001. The next correspondence of record was a letter from Varner to Field on January 2, 2002, with a list of three "suggested changes" to the proposed property settlement agreement.[2] For purposes of this appeal, paragraph three was the only one of consequence, which stated that Varner had an appointment with the office of personnel management at Waterways[3] to educate himself on the language needed regarding "the health benefits under paragraph seven, and the spousal annuity under paragraph eight" of the agreement. On February 8, 2002, Varner sent Field a fax as an "addendum" to the agreement regarding paragraphs seven, eight, and nine which requested that the included language be added to the agreement. The addendum included the following language for paragraph eight:
In the event that Husband predeceases Wife, Husband agrees that Wife shall be paid fifty percent (50%) of his FERS and/or Civil Servants Retirement Service (CSRS) as a Retirement Surviving Spousal Annuity for Wife as his surviving spouse. Husband agrees that Wife will receive full benefits at time of retirement of Husband and not as of the date of the divorce. Wife shall only be entitled to said annuity if she survives Husband. Husband agrees at his retirement to execute such documents as may be required to make his election of Wife to be the beneficiary of the Surviving Spousal Annuity. Husband further agrees to execute any other additional documents required to facilitate payment of the Surviving Spousal Annuity described herein. Husband agrees that this Property Settlement Agreement and Final Judgment of Divorce shall be forwarded to the Office of Personnel Management for the express purpose to reflect Husband's election of Wife to receive full benefits of fifty percent (50%) of his FERS Retirement Surviving Spousal Annuity at his time of retirement, and for the Office of Personnel Management to make such notation in his files and records.
¶ 5. Wallace executed an agreement on February 14, 2002, that did contain the requested language of paragraph eight, from Varner's February 8 fax; however, the language for paragraphs seven and nine was not included. Josephine did not sign that agreement. Consequently, on February 22, 2002, the Pratts executed an agreement, which became part of the judgment of divorce on February 26, 2002. The suggested language from Varner's *389 February 8 fax for paragraphs seven, eight, and nine was not included in the final agreement. For purposes of this appeal, the ultimate language of paragraph eight that was attested to by both parties and their attorneys was the following:
8. In the event that Husband predeceases Wife, Husband agrees that Wife shall be paid fifty percent (50%) of his FERS Retirement Annuity and/or Civil Servants Retirement Service (CSRS) as a retirement surviving spousal annuity for Wife as his surviving spouse. Husband agrees that Wife will receive full benefits at time of retirement of Husband and not as of the date of the divorce. Wife shall only be entitled to said annuity if she survives Husband. Husband agrees at his retirement to execute such documents as may be required to make his election of Wife to be the beneficiary of the Surviving Spousal Annuity. Husband further agrees to execute any other additional documents required to facilitate payment of the Surviving Spousal Annuity described herein. Husband agrees that this Property Settlement Agreement and Final Judgment of Divorce shall be forwarded to the Office of Personnel Management for the express purpose to reflect Husbands's election of Wife as his Surviving Spouse and for his Wife to receive full benefits of fifty percent (50%) of his FERS Retirement Annuity and/or CSRS at the time of retirement, and for the Office of Personnel Management to make such notation in his files and records.
¶ 6. On January 31, 2003, the Office of Personnel Management sent Wallace a letter which notified him that they had processed Josephine's claim for the court-awarded portion of his civil service retirement benefit. The letter stated, "By court order we are to pay your former spouse 50% of your gross retirement annuity benefit and not as the date of divorce. Your former spouses's benefit is to begin with the commencement of your retirement." The letter also stated, "By direction of the court your former spouse is eligible for the maximum survivor annuity benefit based on your federal service."
¶ 7. On July 16, 2004, Wallace filed a motion to reform the property settlement agreement, contending that the final agreement did not properly reflect what the parties agreed to regarding the surviving spousal annuity benefits in paragraph eight, and due to scrivener's error and ambiguous language there was a mutual mistake by the parties when they executed the agreement. On February 15, 2005, Josephine filed an amended response to Wallace's motion in which she affirmatively asserted Wallace's motion was barred and should be overruled because he had not filed the motion within six months of the divorce judgment, pursuant to Rule 60 of the Mississippi Rules of Civil Procedure.
¶ 8. The chancellor held a hearing on the motion for reformation, and on December 29, 2005, entered her memorandum opinion and final judgment denying Wallace's motion. Specifically, the chancellor found that to make the final agreement reflect the prior draft, that Wallace argued was the true intent of the parties, would go beyond reformation. Furthermore, she found that the mistake asserted by Wallace went beyond the context of Rule 60(a) of the Mississippi Rules of Civil Procedure, which allows for reformation where there was a clerical mistake in the drafting of the agreement. The chancellor's memorandum opinion thoroughly discussed the various drafts of the agreement and found that the draft Wallace asserted reflected the parties' understanding and intent, had different language in paragraph eight, as *390 well as paragraphs seven and nine. Specifically, the chancellor found that the draft Wallace proposed had undergone further editing and drafting until a final agreement was reached by the parties. Additionally, the chancellor agreed with Josephine that Wallace's motion was barred, pursuant to Rule 60(b)(2), because Wallace did not file his motion for more than two years after the final judgment was entered, whereas to fall within Rule 60(b)(2) a the motion to correct a mistake must be made within six months of the entry of judgment.
¶ 9. On January 5, 2006, Wallace filed a motion for reconsideration. A hearing was held on January 12, and on January 13, the court entered a final judgment that denied the motion for reconsideration finding that there was no error in the application of Rule 60(a) or Rule 60(b)(2). Aggrieved, Wallace appeals.

STANDARD OF REVIEW
¶ 10. This court has a limited standard of review when reviewing a chancellor's decision. McNeil v. Hester, 753 So.2d 1057, 1063(¶ 21) (Miss.2000). Upon review of a chancellor's opinion, when it is supported by substantial evidence and where the chancellor has not abused her discretion, was not manifestly wrong, clearly erroneous, or applied an erroneous legal standard, we will not disturb her opinion. Townsend v. Townsend, 859 So.2d 370, 371-72(¶ 7) (Miss.2003) (citing McBride v. Jones, 803 So.2d 1168, 1169(¶ 7) (Miss.2002)). Applying an abuse of discretion standard, we will not disturb a chancellor's findings "unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard." McNeil, 753 So.2d at 1063(¶ 21). However, we will review questions of law with a de novo standard. Stacy v. Ross, 798 So.2d 1275, 1278(¶ 13) (Miss.2001).
ISSUES AND ANALYSIS
I. The chancellor erred in not reforming the property settlement agreement to conform to the intent of the parties.
II. The chancellor erred in not correcting a clerical mistake, pursuant to Rule 60(a) of the Mississippi Rules of Civil Procedure, in the property settlement agreement which was incorporated into its judgment of divorce.
III. The chancellor erred, pursuant to Rule 60(b) of the Mississippi Rules of Civil Procedure, in not correcting a mistake in the property settlement agreement incorporated into its judgment of divorce.
¶ 11. All three assignments of error question the chancellor's refusal to reform the agreement, and given that the arguments and analysis are so intertwined, we will discuss them collectively.
¶ 12. Wallace contends that paragraph eight of the agreement, specifically the last sentence, should read as follows:
Husband agrees that this property settlement agreement and final judgment of divorce shall be forwarded to the office of the personnel management for the express purpose to reflect husband's election of wife to receive full benefits of the fifty percent (50%) of his FERS Retirement Surviving Spousal Annuity at his time of retirement, and for the office of personnel management to make such notation in his files and records.
Whereas, the last sentence of the agreement incorporated into the divorce judgment does not include the words "surviving *391 spousal" after "FERS Retirement."[4] According to Wallace, the language he submitted for reformation was from a previous draft of the agreement; however, the submitted language reflects the true intentions of he and Josephine in reaching a property settlement agreement. Wallace contends that the omission of the words "surviving spousal" are the result of scrivener's error and a clerical mistake that warrants reformation to the agreement to reflect the understanding and intent of the parties, pursuant to Mississippi Code Annotated sections 93-5-2(2) and 93-5-23. According to the letter from the Office of Personnel Management on January 31, 2003, Josephine's claim to Wallace's retirement is fifty percent of his gross retirement annuity benefit, to commence on the date of his retirement. The letter further states that Josephine "is eligible for the maximum survivor annuity benefit" based on Wallace's federal service. Essentially, according to testimony from Wallace, this language means that Josephine will be paid surviving spouse benefits upon his retirement and the benefits that begin upon Wallace's death, provided he predeceases her. Additionally, Wallace maintains that he never intended for Josephine to receive both payments of retirement benefits, and the insertion of the words "surviving spousal" into the last sentence of paragraph eight would have cleared the ambiguity that caused the Office of Personnel Management to interpret the divorce judgment in such a way. We disagree.
¶ 13. Josephine maintains that the agreement executed by both parties on February 22, 2002, and incorporated into the judgment for divorce, reflects the true intent and understanding of their agreement as to the retirement benefits. She had originally requested alimony and, when Wallace refused alimony, she was of the understanding that the retirement benefits were in the place of the alimony payments. In her testimony she stated that she believed she accepted "fifty percent of his retirement in lieu of my $1,500 a month . . . alimony that I had given up." She also testified that she had maintained, through Varner, that she would relinquish her claim for alimony in exchange for Wallace's retirement benefits.
¶ 14. Mississippi Rule of Civil Procedure 60 provides a vehicle for relief from a judgment or order. Specifically, Rule 60(a) provides for relief from a clerical mistake "arising from oversight or omission" and states that such mistake may be corrected at any time by the court's own initiative or upon a motion of any party. M.R.C.P. 60(a). Additionally, Rule 60(b)(2) provides that upon motion by a party the court may relieve a party or his legal representative from a final judgment for accident or mistake. M.R.C.P. 60(b)(2). The motion for relief under Rule 60(b)(2) "shall be made within a reasonable time, and not more than six months after the judgment." Id.
¶ 15. While Wallace argues on appeal that the agreement should be reformed pursuant to Dilling v. Dilling, 734 So.2d 327 (Miss.Ct.App.1999), in which the Court upheld a chancellor's reformation of a property settlement agreement incorporated into the divorce judgment pursuant to sections 93-5-2(2) and 93-5-23 of the Mississippi *392 Code Annotated, we disagree with Wallace's argument. Furthermore, we find that the chancellor did not err in her application of Rule 60(a), finding that reformation "would not make the final agreement a mirror-image of the prior draft, and to make the final agreement reflect the prior draft, the court would have to go beyond reformation." We agree with the chancellor's finding and her application of Rule 60(a). In Whitney Nat'l Bank v. Smith, 613 So.2d 312, 315 (Miss.1993), the court stated, regarding the application of Rule 60(a), "the power granted in the rule cannot be utilized to change the effect of a judgment, where the changed effect is not manifest from the record that the change reflects the original intent." Townsend, 859 So.2d at 375(¶ 19) (citing Whitney, 613 So.2d at 315).
¶ 16. We do not find that the chancellor abused her discretion or was manifestly wrong, clearly erroneous, or applied a erroneous legal standard, as required by Townsend. Townsend, 859 So.2d at 371-371(¶ 7). The record makes it clear to this Court that the Pratts reached their agreement by and through the negotiations of their attorneys. However, we are not persuaded that the language proposed by Wallace reflects the original intent of the parties and, therefore, we cannot say that the omission of the words "surviving spousal" was a clerical mistake or scrivener's error that would allow for reformation of the agreement. A thorough comparison of the documents provided in the record before us does not lend this Court to agree with Wallace's contention that the final agreement should be reformed due to a mutual mistake of the parties. While Field's testimony that the agreement incorporated into the judgment for divorce was a result of scrivener's error by his secretary, we agree with the chancellor's findings that to reform the agreement would cause a very different agreement than that which was clearly signed by both Josephine and Wallace, attested to by Field and Varner, and incorporated into the judgment for divorce on February 26, 2002.
¶ 17. Additionally, pursuant to Rule 60(b)(2), Wallace had six months to bring his motion for reformation. Wallace did not file his motion to reform until July 16, 2004, over two years after the judgment for divorce was entered. He argues that even if the court did not have authority to grant relief under Rule 60(b)(2), that the court should reform the agreement pursuant to Rule 60(b)(6). Rule 60(b)(6) states that relief may be granted from a final judgment for "any other reason justifying relief from judgment," which serves as a catch-all exception for relief when equity demands. M.R.C.P. 60(b)(6); Townsend, 859 So.2d at 375(¶ 16). Additionally, a Rule 60(b)(6) motion for relief does not have a specific time limit for bringing the motion as Rule 60(b)(2). However, the court has repeatedly held that in order to be granted relief under a Rule 60(b)(6) motion, the claimant must show exceptional circumstances existed that warrant a modification and/or reformation to the judgment. Townsend, 859 So.2d at 375(¶ 16) (citing Moore v. Jacobs, 752 So.2d 1013, 1017(¶ 17) (Miss.1999)); Bryant, Inc. v. Walters, 493 So.2d 933, 939 (Miss.1986).
¶ 18. Wallace argues the agreement should be reformed because of the inequity allowed for as it reads, where Josephine is designated the surviving spouse and will receive surviving spousal annuity benefits at Wallace's death and fifty percent of Wallace's retirement at the date of his retirement. We disagree with Wallace's contention and do not find that the circumstances are of such an exceptional nature as to warrant reformation under Rule 60(b)(6). The chancellor considered Wallace's *393 argument that the agreement should be reformed because of its inequity, pursuant to Rule 60(b)(6), in his motion for reconsideration and did not agree. We find that the chancellor did not abuse her discretion in denying Wallace's motion, nor was she in error in her application of the rule; therefore, we will not disturb her opinion.
¶ 19. Lastly, Wallace received the letter from the Office of Personnel Management on January 31, 2003; however, he did not file his motion for reformation until July 16, 2004, nearly a year and a half later. Wallace testified that he was not aware there was any time limitation involved and that it was not until he began considering retirement that he took issue with the agreement. We find that even if there was a clerical mistake or accident pursuant to Rule 60(b)(2), Wallace waived such argument by not taking action to reform the mistake within six months of the judgment and/or within six months of receiving the notification from the Office of Personnel Management of Josephine's claim to his retirement.
¶ 20. After consideration of the record before us, the arguments presented by Wallace and Josephine, and the applicable law, we find Wallace's assignments of error I, II, and III to be without merit for all the reasons stated above.
¶ 21. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Varner's paragraph five regarding the surviving spousal annuity stated, "a surviving spousal annuity must also be provided for Wallace in the full amount allowed by the government for Jo's security at Wallace's death." Field's paragraph five stated, "surviving spousal annuity from the Government retirement will be provided to Jo if Wallace predeceases her."
[2] This original draft of the agreement is not in the record, and Field testified that he did not retain a copy of the original agreement on his computer.
[3] Wallace's place of employment.
[4] The last sentence of the executed agreement reads as follows: "Husband agrees that this property settlement agreement and final judgment of divorce shall be forwarded to the Office of Personnel Management for the express purpose to reflect husband's election of wife as his surviving spouse and for his wife to receive full benefits of fifty percent (50%) of his FERS Retirement Annuity and/or CSRS at his time of retirement, and for the Office of Personnel Management to make such notation in his files and records."